Good morning. May it please the Court. My name is Bob Maury. I represent the appellants, Baccarat Fremont developers. I believe there are two issues before the Court today. The first being, did the District Court err when it found that the Corps' regulatory jurisdiction over a series of seasonally wet wetlands did not require a showing that there was a hydrological or ecological connection between the wetlands and the water of the United States? The second question is whether the District Court erred when it found that the Corps had jurisdiction based upon and by virtue of the fact that a man-made barrier separated the wetlands from the water and but for that barrier there would have been a connection. And I believe the answer to both of those questions is yes, the District Court erred. My understanding of the District Court's ruling and the rationale is that because the Corps' regulations, when defining adjacent, state that an adjacent wetland is one that is separated by a man-made barrier and because this wetland is separated by a man-made barrier from a flood-controlled district channel, that that was simply enough. And as long as it fell within the regulatory structure definition, the analysis ends. Now, the Army Corps seized upon that and now is asking this Court to approve of a standard of geographic proximity. That is, as long as you agree geographically close, that's enough for Corps regulatory jurisdiction. Are you claiming a hydrologic connection is the only way to show a significant nexus between an adjacent wetland and a navigable waterway? Are you claiming that that is the only way? Your Honor, nearly the only way. I think there is a situation where an ecological connection could also be a significant nexus under the reading of Swank. All right. The Riverside Bayview case seems to have left that question untouched. Is that correct? I don't know if it left it untouched. I think Riverside Bayview held very specifically that the wetland in that situation, which is a wetland that abutted and also had a hydrological connection and abutted the waters of the United States, that was an adjacent wetland and it wasn't jurisdictional. The question of whether or not the question is whether it could be ecological or hydrological, I think was certainly answered by Swank. Well, Swank addressed an isolated water body with no connection between the wetlands and the navigable rivers. But most interpretations that I know of, and correct me if I'm wrong, of Swank, have not been broad enough to encompass a reading that requires a hydrological connection. I never say you're wrong, but my reading of it is that Swank, I think, defined and clarified what Riverside Bayview was saying and said first what Riverside Bayview said and meant, was what that case ruled was in the specific situation that was there at that time, that a wetland abutting with a hydrological connection, basically, with the water of the United States was adjacent and was jurisdictional. The Court went on, and this was a case dealing with the reach of the Clean Water Act, and also said, in addition to that, that Congress's intent was specific to regulate wetlands and separately bound up with water. And in the very next sentence said, it is the significant nexus between the wetlands and the water of the United States and Riverside Bayview that informed that decision. Now, I think that case, and if you use the term of separately bound up and significant nexus, has to mean something. It has to mean some kind of connection. And whether you can say that connection is hydrological by necessity, ecological under certain circumstances by necessity, I think one thing Swank said is some ecological connections do not apply. Clearly, the situation in Swank, which had an ecological connection pursuant to the Migratory Bird Act, didn't fall within the category of ecological connections that would fall into what they considered the significant nexus. But I don't think that what Swank can be read as, certainly to apply to this case, that there isn't any requirement of a nexus. Or a connection, or a hydrological connection. The question is what kind of nexus, hydrological or ecological? Well, it seems to me that the purpose of the Clean Water Act was to protect the navigable waters of the United States against pollution. And it seems the connection that has to be between the wetlands and the waters of the United States is some connection that will assist in protecting pollution. Obviously, a hydrological connection falls into that category. It is at least theoretically possible to me to figure an ecological connection that could serve a function of filtering that would also protect the navigable waters of the United States against pollution. So when I say hydrological or ecological, very definitely it needs a hydrological connection. Maybe in certain circumstances, the right kind of ecological connection will also qualify as a significant nexus. Thank you. That answers my question. Is it your contention that a hydrological or ecological connection, to use your phrase, would be impossible to prove in this particular case? It is my contention that it's impossible to prove because it doesn't exist. Have we done any scientific testing to determine whether there's communication across the berm, beneath the berm, groundwater? I mean, these are, to use the term that the Corps likes, these are adjacent. And you're saying, then, nonetheless, that there's no ecological or hydrological connection between the two and it would be impossible to prove that. Impossible to prove is a difficult thing for me to answer. All the studies that have been done so far, there is not a hydrological connection and there is no ecological connection. What do you mean by no hydrological connection? There's no water to water. There's no water from that wetland that overflows and goes into the channel. There's no water from the channel that overflows the channel. And to get the situation. I understand the overflow. I'm asking, do we know about groundwater? Do we know about subsoil communication with the water? Yes. What we know about the groundwater is this. It's very unlikely that there is any groundwater, not unlikely, impossible. The reason why these wetlands form on this property is it's hard clay and it can't go into the ground. What happens every summer is it evaporates. So there is no, you don't lose the wetlands because the money, excuse me, the water going into the ground. So there is no groundwater contamination because of the nature of the soil that collects the water and forms the wetlands. There is no evidence that we've seen that there's been any flooding that has caused a breach from the wetlands down to the flood control district. There is no evidence we've seen any flooding that has caused the flood control channel to rise to the level that it could possibly breach the wetland. One of the reasons is that the flood control channel is about eight feet below where the wetlands are. So it would take an extraordinary flood to get up that high, and to our knowledge that has never happened. What did the district court mean when it held that the wetlands serve important functions contributing to the aquatic environment in general and to the nearby tidewaters in particular? Your Honor, I think that was a generalized statement that they took from the briefs as an area assessment of wetlands in general. It wasn't a site-specific analysis of this wetland. So it came from the Corps of Engineers basic site assessment without looking specifically at this wetland and attempting to determine the impact this wetland may or may not have had on this flood control district channel. So I don't know that I can – if I answered that correctly. It's my understanding of what the Court was saying based on what the Corps, the Army Corps had put before the district court at the time. What do you do with the court statement, the Supreme Court's statement in the Riverside Bayview case in footnote 9? It is reasonable for the court to conclude that in the majority of cases, adjacent wetlands will have significant effects on water quality and aquatic ecosystem. If that's so, its definition can stand. That is to say, it may not be enough for you to say, well, you know, this case, it can't be shown. And I'm not sure whether it can or can't, but I understood you say clearly that it cannot in this case. But I'm afraid this footnote doesn't necessarily let you off the hook, even if that's  Well, this footnote, I think, if I'm reading it correctly, if I can explain how I read it, what that footnote was, was rejecting a facial attack on the definition in the regulations, on the regulations. I think when you get to the swank, I think that gets explained exactly what this case was standing for. It also – and I don't think the Court was intending by this footnote in not striking the facial 1985 regulation on adjacency to say this footnote is now describing the outer reaches of the Clean Water Act and the jurisdiction of wetlands. I don't think that was intended, and I don't think that's what that says. And I think that even under these circumstances, if they're absolutely, even given this statement, assuming that was what it was, that that is saying that a wetland that has no ecological and no hydrological connection, that the court has jurisdiction over that wetland. Well, okay. Given what the footnote says, which does seem to, reading it favorably to you, suggests that there must be some, some very, not significant, but some connection, let's assume that, then who has the burden to establish that there is not any? Is that you or is it the Army Corps? I think the Army Corps goes forward to say there is one, and if there's substantial evidence under the APA that there is a connection, and if the Court is convinced that there's ample evidence, I think the Corps under those circumstances would win the day. I think even if we came up with contrary evidence, if there was substantial evidence in the record that there was a connection, I think the Court would then defer to the Army Corps. I don't know if that's right, but I think that's how it works. All right. But it would be permissible under the statute and under the regulation for Congress and then the administrative agency in setting up the relations, the regulations stating that adjacency is a test to determine that, you know, in the great majority of cases there's going to be such a connection, and we're going to make this process so difficult and expensive to administer, if we are required in every individual instance to prove it, that we're just going to sweep it all within. Would that be constitutionally permissible? Your Honor, I don't think it would be constitutionally permissible, no. Because you're going to sweep in that system. You're going to sweep in a lot of situations where there is absolutely no connection. Then it brings in, you know, I think it brings into question Congress's power to regulate isolated wetlands. Because if the purpose of this statute is to protect navigable waters against pollution and maintain navigable waters, and you're sweeping into this wetlands and waters that have absolutely no impact on the maintenance of navigable waters, it's questionable under the Commerce Clause whether you've gone too far under those circumstances. And certainly I think, you know, if you modify the system, the Clean Water Act to include that, and I assume that's what you were saying, you go beyond the statute that you have today or the regulations. Is there any other prohibition? I think there is a prohibition. Is that? No, that was a response to the question. Okay. All right. What happened in this case was the district court took this case and went right to the regulation without ever considering, and I don't think you can consider Riverside Bayview without also reading Swank in conjunction with it and understanding that Swank was defining. And if it is defining, when the district court looked at these facts, the district court had to have some meaning in the terminology significant nexus. And to ignore Swank and to ignore the language in Swank and separately bound up in a significant nexus I believe is error. And to go back to Riverside and simply say all we need to do to find a jurisdiction is go back to the regulations ignores entirely all the jurisprudence that's happened since 1985, all the circuit court decisions. And what has happened that every court, every circuit court who is post-Swank who has decided it's the one exception, Carabello, out of the Sixth Circuit, has focused on the hydrological connection and required a hydrological connection to find jurisdiction. Okay. Well, you've saved a little time. We'll hear from the other side and then we'll hear from you again. Thank you very much. Thank you. Thank you. Good morning. May it please the Court. My name is Todd Kim from the Department of Justice for the Federal Appellees. Baccarat here received a permit to engage in certain activities introducing fill material into covered waters, namely certain wetlands. It nonetheless here contests whether the Corps of Engineers had regulatory jurisdiction at all. Its argument is that there must be a proven hydrological or ecological connection for the Corps to assert jurisdiction. Baccarat's argument fails on both the facts and the law. And we can discuss both of those. First, the facts. Substantial evidence in the administrative record supported the Corps' finding that there were, in fact, hydrological and ecological connections. I don't understand exactly how opposing counsel could say that there was no evidence of water-to-water communication. We can talk about all the evidence and the actual findings the Corps made. Second, on the law, there is no such requirement. He reads Swank to impose such a requirement. It doesn't do so. It explicitly sets aside the adjacency regulations as other things that the Court was not talking about. I can quote Swank as saying that I recognize Congress' unequivocal acquiescence to and approval of the Corps' adjacency regulations. That's at page 167 of Swank. So let's talk about both the facts and the law. First, the facts. The Corps actually found hydrological and ecological connections. They claim otherwise based on their reading of the supposed jurisdictional determination, which they said recognized that, in fact, there was no hydrological connection. Not true. If you look at it, it says that the wetland parcels were contiguous with the surface drainage ditch that discharged through a set of culverts with tides gates to the channel. They'd been recently blocked by air bladder dams. Those air bladder dams, these man-made barriers have obstructed the hydrologic connection, necessarily showing that without those bladder dams, there was a hydrologic connection, even if that were not enough. Let's go on two pages later. The Corps makes it even clearer. And then later in the permit evaluation decision document, this is at page 250 of the excerpt of the record, the Corps stated the freshwater wetlands in the mitigation area, the wetlands we're talking about, proposed for conversion to brackish wetlands currently receive some water from the That's a quote. I don't understand how they say there's no water-to-water communication. If there were no water-to-water communication, I don't know why their own submissions wouldn't have recognized that communication repeatedly. Who put the bladder dams in the culverts? That's unclear on the record, Your Honor. We don't know the answer to that. Let me ask. This is a summary judgment. Yes, it is, Your Honor. And what worries me about this case is whether or not there really is a factual dispute here. If there is a factual dispute, Your Honor, it was a factual dispute that was subject to the decision-making and fact-finding duties of the Army Corps of Engineers. This is review on the administrative record. As opposing counsel properly noted, substantial evidence review applies. If there was a factual dispute, it is for the Corps to determine it. The district court wasn't supposed to engage in its own fact-finding. This is review under the APA. The Corps actually made those factual findings in the decisions we're talking about. The question for the district court, was there substantial evidence supporting those findings? And again, this all goes to the factual question before the court regarding whether there was a hydrologic or ecological connection. Of course, the record also goes into length about the ecological connections. Thackeratt's own submissions, again, for instance, noted that the wetlands performed nutrient transformation activities, precisely the type of ecological connection that we need. Of course, this is assuming that Thackeratt's view of the law were correct in the first place. It is not correct. The Riverside baby decision of the Supreme Court makes quite clear, I'm quoting, a definition of waters of the United States encompassing all wetlands adjacent to other bodies of water over which the Corps has jurisdiction is a permissible interpretation. That's at page 135. They read Swank to change Riverside Bayview. All the courts of appeals, we cite this in our brief, have recognized Riverside Bayview does not, was not overruled by Swank. Swank addressed an entirely different provision within the regulations, A3, not a provision that's at issue here. We note, for instance, that they claim that the Swank language regarding inseparably bound up and significant nexus changes Riverside Bayview. Not true again. For instance, the actual source of the inseparably bound up language was this language in Riverside Bayview. We cannot say that the Corps' conclusion that adjacent wetlands are inseparably bound up with the waters of the United States, based as it is on the Corps' and EPA's technical expertise, is unreasonable. Neither Riverside Bayview nor Swank breathes a word about there being a hydrologic or ecological connection requirement. Rather, both Swank and Riverside Bayview recognize the continuing validity of the adjacency regulations. Let's remember the text of those regulations, the text that was before the Supreme Court in 1985. It says that the word adjacent is defined to include bordering contiguous or neighboring, and it makes explicit that wetlands separated by manmade barriers, such as dykes or berms, continue to be adjacent. And let's look at the 1977 preamble in which the Corps set forth its authoritative interpretation of this language. It says that wetlands that form the border of or are in reasonable proximity to waters of the United States are those which the Corps has yet sought to cover. That's precisely what we're doing here. The Corps' determination that the wetlands at issue were, in fact, reasonably proximate and thus adjacent to the flood control channels is borne out by the Court's profound technical expertise and its technical analysis and its factual conclusions, all of which should get this Court's deference under the APA. The Corps talked about the fact that the manmade barriers didn't defeat the jurisdiction. The Corps talked about how this particular distance was reasonable, given the types of habitats and hydrologic systems we're talking about. The Corps talked about the wetlands functions performed. I'm sorry. I didn't mean to cut you off. Kagan. The Corps talked about the fact that these wetlands were particularly important in this area. They talked about the fact that this was within the 100-year flood plain. They talked about the fact that the soils at issue were the same type of soils found elsewhere underneath the channels at issue. All of these go to support the Corps' finding that these were reasonably proximate, adjacent wetlands. So under either the facts – sorry, under – on both the facts and the law independently, Baccarat's argument fails. One other thing I should note – well, a couple other things I should note. Their discussion of the case law, footnote 9 in Riverside Bayview, I think makes quite clear exactly what I believe the tenor of the Court's questions implied. That is, even if a particular wetland may not be shown to have significant functional effects on nearby waters, it is appropriate for the Corps nonetheless to assert jurisdiction, and I'm quoting here, the Corps may always allow development of the wetland for other uses simply by issuing a permit. That is, the issues that they're talking about, the issues in those other types of wetlands that hypothetically might not actually have an effect on adjacent waters, the Supreme Court in footnote 9 has told us, yes, it's still fine for the Corps to have jurisdiction, because as a class, adjacent wetlands can be expected to have these functional effects. But in the unlikely and hypothetical instance of a wetland that has no such functions, the Corps can grant a permit. And indeed, Baccarat received a permit here. I'd also note that they talk about circuit court decisions since 1985, which they claim required a hydrologic connection. I know of no such decision. Many circuit court decisions have focused on hydrologic connections. That we can agree to, but there's a significant difference between whether it's required or sufficient. It's a classic sufficient versus necessary problem. They cite not a single case in which any court has found that an adjacent wetland within our definition of adjacent is nonetheless not regulable because there was no hydrologic connection. They don't cite a single case. Kennedy. So do you read then Swan or Swank, I guess it's being pronounced. I was doing it Swansea. But anyway, Swank, where the Court describes Bayview as dealing with the adjacency regulation and says we found that Congress's concern for the protection of water quality and aquatic ecosystems indicated its intent to regulate wetlands inseparably bound up with the waters of the United States. And then goes on in the next paragraph immediately to say it was a significant nexus between the wetlands and navigable waters to be a generalized statement and that it didn't open up for debate on jurisdiction. A claim such as is being made here, as I understand it, that this is a case where it is separable and there is no significant nexus. It's just as a general rule, your definition, the Court's definition of adjacent covers it, even if you could prove even here that there was absolutely no intermixing of waters or ecological aspects. If I understand Your Honor's question correctly, yes, I believe that's right. That is right. When you're talking about significant nexus and inseparably bound up, I don't know if the Supreme Court in Swank was necessarily setting down tests so much as explicating as a factual matter what was going on in Riverside Bayview. I should note certain other courts have adopted significant nexus as a test. I don't think it's necessary for this Court to opine on that issue, because even assuming there is such a significant nexus test, that test is satisfied here. I believe adjacency itself, as the Riverside Bayview Court noted, is a sufficient basis for regulating wetlands. Therefore ---- There was some greater distance between the wetlands and the adjacent water. Maybe that would be open for debate, but not in this case. I think what would be open for debate is the application of the Court's regulations in that instance. If the Court were attempting to claim that something was bordering, neighboring or contiguous when it was 100 miles away, there would be a significant question as to whether that was arbitrary and capricious. But I think when we are asking whether there is a legal test of inseparably bound up or significant nexus, I don't know if that's supported by the Swank decision. However, to the extent that one could read Swank that way, Swank did not say that the inseparable binding upness or the significant nexus has to be specifically a hydrological or ecological connection. We think it's perfectly reasonable to conclude, as the Court did, that geographic proximity is a good proxy for determining when Congress thought certain things should be regulated, because adjacent wetlands, as a course, have functional effects upon nearby waters. Are you suggesting we have no Ninth Circuit case that I know of that defines a significant nexus test? Are you suggesting that if we are to write an opinion in this case, we should not establish one? Yes, Your Honor. And why? There is no such opinion. That's quite right in this Court. Yeah, but why shouldn't we write such an opinion? Why shouldn't you? Yes. Well, I don't believe that the Swank decision really does establish a significant nexus test, and it certainly didn't do so in the context of adjacent wetlands given, again, the Swank court's recognition of Congress's unequivocal acquiescence in and approval of the court's adjacency regulations. The Swank court was talking about a completely different set of facts. It was talking about a former gravel pit that had been filled up and there was no claim that it was nearby any other jurisdictional waters. The claim there was merely that they were within the court's jurisdiction because of the migratory burden. This is a completely different set of facts. Again, certain other courts have talked about significant nexus of the test. I don't think it's necessary for this Court to reach that issue. Thank you. I still have some time left. I should note as a matter of further factual explication that they claim that in their reply brief that the ditches at issue do not reach their property. In fact, their own submission in the administrative record at pages 155 to 56 of the excerpts of record, and I'm quoting, say three drainage ditches that are regulated by flap gates enter the property from the ACFCD flood channels. So that's directly contrary to what they claim in their reply brief. I still have time, but I've said a lot. And unless the Court has other questions, I'd be perfectly happy to cede the rest. We're happy to accept donations. Thank you, Your Honor. Thank you very much. Mr. Moore, I think you've saved a little time. Yes, I have. A couple points. In answer to the bladder dams, if you understand the geography, the bladder dams are not on the back of that property. The bladder dams are on the channel. So taking away the bladder dams does not affect the wetlands, which are 50 to 60 feet away and also about 8 feet taller. We don't know who took the bladder dams out, but the bladder dams do not affect the exchange of water. There is a channel that goes from there up close to the property, which doesn't get to the property, and that is the closest that water would get actually to the back-erect land. Now, in terms of the question as to whether there's a factual dispute, it seems to me that if they're claiming there is a hydrological connection, and we're saying there's not and we do say there's not, based upon their own final agency determination, and in that final agency determination, they said there would be a connection but for the berm, and they say there is proximity. If there would be a connection but for the berm, it means there is not a connection. They have never found a connection, never claimed jurisdiction based upon a connection because there is not a connection. The Court has not decided to issue as to whether or not there is substantial evidence as to whether or not there's a hydrological connection or an ecological connection. If there is a factual dispute, as it is, we say there's not because in their final agency determination they don't say that there is a connection, then it should go back to the district court to make that determination looking at the record before the Court. Thank you. Roberts. Thank you very much. A very nice argument on both sides. Thank you both. The case of Back Rock Fremont Developers v. U.S. Army Corps of Engineers is now submitted for decision. The last case on the argument calendar is Pacific Coast Federation Fishermen's Associations v. Bureau of Reclamation. Thank you. When you're ready, counsel.
judges: D.W. Nelson, W. Fletcher, Fisher